**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DONNA RANIERI AND NICHOLAS RANIERI, on behalf of themselves and all others similarly situated,<br><br>  *Plaintiffs*,<br><br>    v.<br><br>BANCO SANTANDER, S.A., et al.,<br><br>  *Defendants*. | Civil Action No. 15-3740<br><br>**OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

  **THIS MATTER** comes before the Court on Defendants Banco Santander, S.A., Santander Holdings USA, Inc., Santander Bank, N.A., Sovereign Bancorp, Inc. and Sovereign Bank, N.A.'s (collectively, "Defendants") motion to compel individualized arbitration and to dismiss or stay the action. Dkt. No. 8. For the reasons set forth herein, the motion is **DENIED**.

**I. BACKGROUND**

  This case involves claims that Defendants failed to pay their mortgage loan officers the required minimum wage and overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a et seq. Defendants do not address the merits of the claims. They argue only that the dispute must be arbitrated in light of an arbitration provision contained in an employment agreement.

1

### A. Mortgage Loan Officers

Defendants jointly operate various retail banking facilities in several states, including New Jersey and Pennsylvania. Compl. ¶¶ 9-13, 24, 34. Plaintiffs Donna Ranieri and Nicholas Ranieri ("Plaintiffs") are former employees of Defendants who worked as mortgage loan officers in Defendant Santander's New Jersey bank branches. Id. ¶¶ 77, 79-80, 88-89. Mortgage loan officers were largely responsible for originating residential mortgage loans for Santander customers. Id. ¶¶ 81, 90.

Plaintiffs were full-time employees who were scheduled to work 40 hours per week but who regularly worked more. Id. ¶ 36. On weekdays, they worked on mortgage files from home before the workday stated. Id. ¶¶ 83, 92. Their lunch breaks were frequently interrupted to handle customer service issues in the branch. Id. ¶ 42. When the bank closed for the day, Plaintiffs spent additional time working on mortgage files and answering customer questions by telephone. Id. ¶¶ 85, 94. Plaintiffs also worked on the weekends marketing for Defendants. Id. ¶ 40. Defendants never compensated Plaintiffs for the extra hours worked. Id. ¶ 78. Defendants' other mortgage loan officers across the country allegedly worked similarly long hours without compensation. Id. ¶¶ 40-43, 54-56.

### B. Arbitration Agreement

At the start of their employment, Plaintiffs received offer of employment letters ("Offer Letter") and a Mortgage Development Officer Agreements ("MDO Agreement").[1] Declaration of Jessica Cohen ("Cohen Decl.") ¶¶ 2-5. The Offer Letter contained the following paragraph:

---

[1] Plaintiffs did not attach the Offer Letter or MDO to the complaint but do not challenge the authenticity of the versions submitted together with Defendants' motion. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (internal citations omitted).

> **Agreement:**
>
> - As a condition of employment, you will be required to execute the enclosed Mortgage Retail Development Officer Agreement ("Agreement"), with all attached Exhibits, on or before your first day of work. Also attached you will find a copy of the Mortgage Sales Commission Plan ("Plan") which reflects your pay structure.

Offer Letter, Cohen Decl. Exs. 1, 3 (original emphasis).

The MDO Agreement is a five-page document that contains six sections. The fifth section contains the bolded heading "**TERMINATION AND CLAIMS**." MDO Agreement, Cohen Decl. Exs. 2, 4 (original emphasis). Section 5.04, on the same page, contains the following language:

> Any controversy or claim arising out of the MDOA's employment or the termination thereof shall be resolved through final and binding arbitration in accordance with the Employment Arbitration Rules and Mediation Procedures or other applicable rules of the American Arbitration Association then in effect. **Any such arbitration shall take place in the state in which the MDOA last worked for the Bank. Notwithstanding any contrary rule or procedure, the MDOA agrees to waive any right to bring, maintain, or participate in, or recover any relief from, a class, collective, or representative action against the Bank, its affiliates, or any of their respective employees or other agents to the maximum extent permitted by law. The MDOA further agrees that if included within a class, collective, or representative action, the MDOA will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be. The MDOA retains the right to challenge the validity of the waiver set forth in this Paragraph 5.04, and the MDOA will not be subject to retaliation by the Bank for asserting such right.** Such controversies and claims subject to arbitration include, but are not limited to, those arising under this Agreement and those arising under any federal, state or local statute relating to employment and any tort, contract or common law claim . . . .

MDO Agreement § 5.04 (original emphasis).

The MDO Agreement also contains a choice of law provision stating, "The Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of

3

Pennsylvania except its choice of law principles and except to the extent preempted by federal law." MDO Agreement § 604.

Both Plaintiffs signed the MDO Agreements on the bottom of the final page. Their signatures, however, were directly under a bolded sentence that read, "**I certify, by my signature below, that I have received a copy of the Mortgage Sales Commission Plan, which has been provided to me.**" Cohen Decl. Exs. 2 and 3 at 5.

### C. Procedural History

Plaintiffs filed a putative class and collective action complaint on June 3, 2015, asserting causes of action under the FLSA and NJWHL. Compl., Dkt. No. 1. They bring the FLSA collective action claims on behalf of all current and former employees whose job duties included working as a mortgage loan officer and who were not paid minimum wages and overtime compensation in the past three years. Id. ¶ 3. They bring the NJWHL class action claims on behalf of those uncompensated mortgage loan officers who worked in New Jersey. Id. ¶ 4. In August 2015, Defendants filed the instant motion to compel under Fed. R. Civ. P. 12(b)(6). Dkt. No. 8.

## II. LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a

sufficient factual basis such that it states a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay."  Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 772 (3d Cir. 2013).[2]

**III.   ANALYSIS**

With its enactment of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., Congress "expressed a strong federal policy in favor of resolving disputes through arbitration."  Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009).  Even in light of the FAA, however, "[a]rbitration is strictly a matter of contract.  If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."  Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999).  Thus, in deciding whether a party may be compelled to arbitrate under the FAA, the Court considers (1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the dispute falls within the scope of that valid agreement.  Flintkote Co. v. Aviva PLC, 769 F.3d 215, 219-20 (3d Cir. 2014).  The party resisting arbitration may then invalidate the clause based on generally applicable contract defenses.  Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179 (3d Cir. 1999).

---

[2] Where, as here, all the pertinent documents are before the Court, a motion to dismiss standard is appropriate because Plaintiffs have not responded to the motion to compel with additional facts that require discovery or the burden shifting of a summary judgment standard.  See Alder Run Land, LP v. Ne. Nat. Energy LLC, 622 F. App'x 164, 166 (3d Cir. 2015).

### A. Agreement to Arbitrate

To determine whether the parties agreed to arbitrate, courts turn to "ordinary state-law principles that govern the formation of contracts." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009). Here, however, the parties dispute which state's contract law should apply. Defendants' argue that the MDO Agreement's choice-of-law provision designating Pennsylvania law should govern. Plaintiffs respond that the choice-of-law provision should not be enforced and that New Jersey law should apply because Pennsylvania has no connection to the parties or the transaction. Defendants are correct.

The parties appear to agree on the threshold issue that New Jersey's choice-of-law rules should be used to evaluate whether the MDO Agreement's choice-of-law clause is enforceable. See Opp'n Br. at 5-6, Dkt. No. 13; Reply Br. at 4 n.2, Dkt. No. 14. Although the Court ultimately agrees, some clarification on the reason why is necessary. The parties seem to assume that because New Jersey is the forum state, its choice-of-law rules will apply. This "forum state" rule derives from cases where the federal court faces a choice of law question in a diversity jurisdiction case. See Maniscalco v. Brother Int'l (USA) Corp., 709 F.3d 202, 206 (3d Cir. 2013) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496 (1941)). But here, the Court does not have diversity jurisdiction over the claims, so the "forum state" rule would not automatically apply.[3]

Although the parties have not provided much other guidance on why New Jersey's choice-of-law rules apply, their citation to the Third Circuit's decision in Gay v. CreditInform is

---

[3] As evidence of the confusion, the parties cite several choice-of-law cases that involve diversity jurisdiction. See Sullivan v. Sovereign Bancorp., Inc., 33 F. App'x 640, 641 (3d Cir. 2002); Valcom, Inc. v. Vellardita, No. 13-3025, 2014 WL 1628431, at *7 (D.N.J. Apr. 23, 2014); Shannon v. B.L. England Generating Station, No. 10-04524, 2013 WL 6199173, at *3 (D.N.J. Nov. 27, 2013); Ocean City Exp. Co. v. Atlas Van Lines, Inc., No. 13-1467, 2013 WL 3873235, at *4 (D.N.J. July 25, 2013); see also Sys. Operations, Inc. v. Sci. Games Dev. Corp., 555 F.2d 1131, 1136 (3d Cir. 1977) (discussing application of state law principles to pendent state law claims).

6

instructive. 511 F.3d 369 (3d Cir. 2007). There, the plaintiff filed a class action law suit in the Eastern District of Pennsylvania against a credit company, asserting a federal statutory claim under the Credit Repair Organizations Act and a pendent state statutory claim under the Pennsylvania Credit Services Act. Id. at 374-75. The defendant moved to compel arbitration based on an arbitration provision in the parties' service agreement. Id. at 375. The agreement contained a choice-of-law clause providing that Virginia law governed its terms, but the plaintiff challenged the clause's enforceability. Id. at 387-88. The court found it appropriate to apply Pennsylvania's choice-of-law rules in analyzing whether the Virginia law clause was enforceable. Id. at 389. The court explained its reasoning as follows:

> But inasmuch as [plaintiff] argues that Pennsylvania law governs the arbitration provision and the Agreement as a whole, it seems reasonable to use Pennsylvania law in evaluating the choice-of-law provision. The use of Pennsylvania law on this choice-of-law question is consistent with what we said in Spinetti that "[t]he federal policy encouraging recourse to arbitration requires federal courts to look first to the relevant state law of contracts . . . in deciding whether an arbitration agreement is valid under the FAA." 324 F.3d at 214. Furthermore, if the District Court's jurisdiction in this federal question case had been based on diversity of citizenship of the parties we would apply Pennsylvania's choice-of-law principles as the court was in the Eastern District of Pennsylvania. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). Accordingly, we look to Pennsylvania law to determine which state's law we should use in considering the unconscionability argument.

Id.

      Gay is a helpful analogue to the instant matter. Here, as in Gay, the use of New Jersey conflicts analysis is reasonable given that the allegations arise largely out of New Jersey contacts and the Court would apply New Jersey's rules had the case been based in diversity. As such, the Court deems it appropriate to look to New Jersey choice-of-law rules in evaluating whether the Pennsylvania choice-of-law clause is enforceable.

7

"Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341, 614 A.2d 124, 133 (1992) (citations omitted). In deciding whether to enforce a contractual choice of law, the Supreme Court of New Jersey has cited the Restatement (Second) of Conflicts of Laws § 187(2) ("Restatement"), which provides that the law of the state chosen by the parties will apply unless

> (a) the chosen state has no substantial relationship to the parties or the transaction <u>and there is no other reasonable basis for the parties' choice</u>, or
>
> (b) application of the law of the chosen state would be <u>contrary to a fundamental policy of a state which has a materially greater interest than the chosen state</u> in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

Id. (emphasis added); see also North Bergen Rex Transport, Inc. v. Trailer Leasing Co., 158 N.J. 561, 568-69, 730 A.2d 843, 847–48 (1999) (quoting same language).

Under this test, the Court will enforce the MDO Agreement's designation of Pennsylvania law. First, there is a reasonable basis for the selection of Pennsylvania law. As the Restatement recognizes, reasonableness is not a high bar. While the forum will not "apply a foreign law which has been chosen by the parties in the spirit of adventure or to provide mental exercise for the judge . . . [c]ontracts are entered into for serious purposes and rarely, if ever, will the parties choose a law without good reason for doing so." Restatement § 187 Cmt. f. A good reasons exists here. According to Plaintiffs' complaint, Defendants have bank branches in Pennsylvania. It makes sense that the parties' employment contract would apply the familiar laws of a state in which Defendants do business. Pennsylvania law may not be the most obvious choice, or have a

8

substantial connection to the claims here, but neither reason is sufficient on its own to ignore the parties' contractual choice. So long as a reasonable basis exists (which it does here) subsection (2)(a) cannot be used to invalidate a choice-of-law clause.

Second, the application of Pennsylvania contract law to the agreement will not violate a fundamental policy of New Jersey. Both states recognize a general policy in favor of arbitration. See Sarbak v. Citigroup Glob. Markets, Inc., 354 F. Supp. 2d 531, 537 (D.N.J. 2004); Wert v. Manorcare of Carlisle PA, LLC, 124 A.3d 1248, 1266 (Pa. 2015). Both states also share similar rules for the interpretation of contracts. Budtel Associates, LP v. Cont'l Cas. Co., 915 A.2d 640, 645 (Pa. Super. Ct. 2006) (comparing Ins. Adjustment Bureau Inc. v. Allstate Ins. Co., 905 A.2d 462, 468-69 (Pa. 2006) with Bd. Of Education v. Utica Mut. Ins. Co., 798 A.2d 605, 610 (N.J. 2002)). Public policy therefore cannot be a basis for voiding the clause. The Court will honor the parties' contractually selected choice.

### B. Agreement to Arbitrate Under Pennsylvania Law

Defendants maintain that Plaintiffs agreed to arbitrate because they received the MDO Agreements, which contained the Arbitration Clause, when they started working; they were required to execute the document as a condition of their offer of employment; and they did in fact sign it. Plaintiffs contend that they never agreed to arbitrate their claims. Namely, they argue that their signatures acknowledged receipt of the Mortgage Sales Commission Plan but not their intent to be bound by the terms of the MDO Agreement. Because the contract is susceptible to two logical constructions, the Court cannot yet find that Plaintiffs agreed to arbitration.

Before concluding that there is a valid contract under Pennsylvania law, the court must "look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there

was consideration." Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002) (internal citations omitted). "When a written contract is clear and unambiguous, the parties' intent is contained in the writing itself . . . [However,] an ambiguity is present if the contract may reasonably be construed in more than one way." Wert v. Manorcare of Carlisle PA, LLC, 124 A.3d 1248, 1259 (Pa. 2015) (internal citations omitted).

Defendants' incorrectly argue that Plaintiffs must be bound to the MDO Agreement because their signatures appear on the documents. See Defs.' Br. at 6 n.3. Typically, a party's signature on an agreement objectively manifests assent to agree to the entire contract. See Germantown Sav. Bank v. Talacki, 657 A.2d 1285, 1289 (Pa. Super. 1995); see also Thomas v. Jenny Craig, Inc., No. 10-2287, 2010 WL 3076861, at *5 (D.N.J. Aug. 4, 2010). But the MDO Agreement's ambiguous language makes this case atypical because the purpose of the signature can be construed in more than one way. The ambiguity stems from the sentence located directly above the signature line, which states that the signature below serves as confirmation that Plaintiffs received the Mortgage Sales Confirmation Plan. On one hand, Plaintiffs' signatures could memorialize only that they received the Plan; on the other hand, the signatures could represent their assent to agree to the terms of the MDO Agreement, as well as confirmation that they received the Plan. Defendants do not cite to, nor is the Court aware of, any cases where a signature served to bind a party under such ambiguous circumstances.[4] As such, the Court cannot reach a conclusion one way or the other from the face of the complaint and the MDO Agreement alone.

---

[4] Defendants cite to two prior cases where federal district courts compelled arbitration based on prior versions of the same MDO Agreement. Gokhberg v. Sovereign Bancorp, Inc., No. 11-1884, 2011 WL 3862155 (E.D. Pa. Sept. 1, 2011); Goldberg v. Sovereign Bancorp, Inc., No. 10-6263, Dkt. No. 17 (S.D.N.Y. Aug. 19, 2011). Neither case is particularly helpful. In Gokhberg, the plaintiff signed the Agreement but only challenged it on unconscionability grounds, without reference to any signature clause like the one at issue here discussing acceptance of the Mortgage Sales Commission Plan. 2011 WL 3862155, at *1-2. Goldberg is even less helpful because, there,

The inability to find intent to be bound is further buttressed by two principals.  First, "[b]ecause the intent of the parties in cases such as this so often turns upon disputed questions of fact, it is only the very rare case which can be decided upon pleadings alone." McGoldrick v. TruePosition, Inc., 623 F. Supp. 2d 619, 627 (E.D. Pa. 2009) (internal citation omitted).  Second, because Defendants supplied Plaintiffs with the MDO Agreement, any ambiguous language is construed against them as the drafters of the contract.  See Rusiski v. Pribonic, 511 Pa. 383, 390 (1986).

Where, as here, "the complaint and its supporting documents are unclear regarding the agreement to arbitrate . . . the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." Guidotti, 716 F.3d at 776.  The parties must therefore resolve this question with the aid of discovery before the Court can address the remaining questions of arbitrability.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to compel individualized arbitration and to dismiss or stay the action is **DENIED WITHOUT PREJUDICE**.

**Dated: April 4, 2016**

>                            */s Madeline Cox Arleo*
>                            **MADELINE COX ARLEO**
>                            **UNITED STATES DISTRICT JUDGE**

---

"it [was] undisputed that Parties entered into the MDO Agreement containing the arbitration clause at issue." Goldberg, No. 10-6263, Dkt. No. 17 at 5.

11